# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-1228V

| | |
|---|---|
| SAVANNAH SHARPE,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: April 30, 2024 |

*Timothy William O'Hara, Marvin Firestone MD, JD & Associates, LLP, San Mateo, CA, for Petitioner.*

*Madelyn Weeks, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On April 16, 2021, Savannah Sharpe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following a tetanus vaccine she received on July 16, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that Petitioner has preponderantly established that the Tdap vaccine she received on July 16, 2019, was administered into her right arm.

## I.   Relevant Procedural History

On February 24, 2023, about 22 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner was not entitled to compensation because "[a]lthough Petitioner contends that she received the vaccination in her right shoulder, the vaccination record clearly reflects that the vaccine was administered in her left shoulder." Rule 4(c) Report (ECF No. 26) at 6.

Petitioner filed a Motion for Decision ("Mot.") regarding the site of her vaccination on May 15, 2023. ECF No. 29. Respondent filed his response ("Resp.") on July 7, 2023. ECF No. 30. Petitioner filed a reply ("Repl.") on July 14, 2023. The issue of site of vaccination is now ripe for a fact ruling.

## II.   Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right or left arm, as it relates to whether Petitioner can make the required showing that pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(iii).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Finding of Fact

Based on a review of the entire record, including the medical records and affidavits, the arguments in Respondent's Rule 4(c) Report, and the arguments in the parties' respective pleadings, I find that Petitioner's July 16, 2019 Tdap vaccine was likely

administered in her right arm, as she contends. The following points are particularly relevant to that finding:

- Petitioner's pre-vaccination medical records reveal no injuries, inflammation, or dysfunction in either of Petitioner's shoulders.

- Petitioner received a Tdap vaccine at the office of her primary care provider ("PCP") on July 16, 2019. Ex. 2 at 63-64. The vaccine administration record indicates that the site of vaccination was "deltoid left." Ex. 9 at 7

- On August 2, 2019, 17 days after her vaccination, Petitioner visited her chiropractor. Ex. 8 at 2. Petitioner reported that she "had to get a vaccination for DTaP about 2 weeks ago on 7/16. Since then *right arm* has been swollen and achy from injection sight [sic]." *Id*. (emphasis added).

- Petitioner continued to complain of right shoulder pain during her subsequent chiropractic visits. On November 4, 2019, the chiropractor recorded that Petitioner "continues to complain of R shoulder pain rom her vaccination." Ex. 8 at 2. On May 12, 2020, he noted that he saw swelling on Petitioner's right upper arm "in the area of the shot." *Id*. On September 14, 2020, Petitioner reported that her "right shoulder still hurts around area of injection." *Id*.

- Petitioner returned to her PCP for her right shoulder pain on January 25, 2021. Ex. 9 at 27-29. She reported that she had "started to notice right upper arm pain after receiving Tdap vaccination on 07/16/2019." *Id*. at 28. Although Petitioner reported feeling a lump in her arm, the doctor found "no palpable mass on [her] exam." *Id*. at 28-29. During the range of motion exam, Petitioner was "guarding against right shoulder flexion and abduction beyond 90 degrees due to discomfort in deltoid." *Id*. at 29. An ultrasound of Petitioner's right arm was ordered, which was normal. *Id*. at 22, 27.

- Petitioner filed an affidavit in which she states that "the nurse placed the injection on the center of my right shoulder, above the arm." Ex. 1 at ¶4. She "immediately felt excruciating pain at the injection site" and told the administrator, who advised that it would resolve "in a few days." Id. at ¶6-7. She recalled that when she "got home . . . [she] could feel a lump … where the vaccine had been administered." *Id*. at ¶8.

4

A review of the entirety of the record supports the conclusion that Petitioner more likely than not received the July 16, 2019 Tdap vaccine in her right arm. Only one record - the initial vaccine administration record - definitively states that Petitioner received the flu vaccination in her left arm. Ex. 9 at 7. All remaining records for periods thereafter are consistent in identifying the vaccinated arm as the right.

Thus, Petitioner consistently attributed her right shoulder pain to her vaccination when seeking treatment. For example, at her first visit to her chiropractor on August 2, 2019, only 17 days after her vaccination, Petitioner reported that her right arm was swollen and achy from the injection. Ex. 8 at 2. She continued to report right shoulder pain, which she attributed to her vaccination, at subsequent visits to her chiropractor for more than a year. *Id*. at 2-3. When she returned to her PCP for treatment on January 25, 2021, Petitioner reported right upper arm pain that began after her Tdap vaccination. Ex. 9 at 28. In addition, Petitioner provided affidavit testimony stating that she received the vaccine in her right arm and experienced immediate "excruciating pain at the injection site." Ex. 1 at ¶6, 9.

Petitioner's pre-vaccination medical records also show she had no history of pain or dysfunction in her right shoulder. She suffered from right shoulder pain after vaccination and sought treatment quickly, within weeks, while consistently attributing her pain to a Tdap vaccine administered to her right shoulder. Petitioner only ever reported right shoulder pain resulting from her vaccination and received treatment only to her right shoulder. There is no evidence in the record of any other possible cause of Petitioner's right shoulder pain.

Respondent argues that the vaccine administration record should be afforded more weight than the other records, over Petitioner's statements that establish vaccination in the right arm rather than the left. Resp. at 7. However, this is not a case in which there are no contemporaneous records supporting Petitioner's statements regarding the site of vaccination – and thus where only witness statements support Petitioner's situs contentions. Rather, Petitioner reported right shoulder pain to her chiropractor only 17 days after her Tdap vaccination – the first time she reported pain. Ex. 8 at 2. She continued to attribute right shoulder pain to her vaccination over the following 18 months. *Id*. at 2-3. On May 12, 2020, Petitioner's chiropractor observed swelling on her right upper arm. Ex. 8 at 2. When she returned to her PCP for treatment, she again reported right shoulder pain since her vaccination, as well as a lump at the injection site. Ex. 9 at 27-29. At that visit, the doctor observed Petitioner's right shoulder pain during a range of motion examination and ordered an ultrasound of Petitioner's right arm to check for a mass or other abnormality. *Id*. There is ample contemporaneous

evidence in the record, and not only Petitioner's statements, to rebut the single notation of vaccination in the left arm.

Respondent also highlights that Petitioner did not mention right shoulder pain at each and every medical visit she had after her vaccination. Resp. at 8. While true, this argument does not negate the fact that when she *did* mention shoulder pain resulting from her vaccination, Petitioner unwaveringly stated that she received the vaccination in her right arm. Petitioner's failure to mention shoulder pain at intervening appointments could impact other determinations, such as damages, but does not undermine my conclusion that she has preponderantly established vaccination in her right arm. Overall, Petitioner's own assertions are sufficiently corroborated by the medical records to accept her contention of vaccine situs.

V.     **Scheduling Order**

**Respondent shall file, by Friday, May 31, 2024, a status report indicating how he intends to proceed in light of this fact ruling.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran  
Brian H. Corcoran  
Chief Special Master